**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| AMANDA D. Q., Plaintiff, | ) | |
| v. | ) | 1:25CV387 |
| FRANK J. BISIGNANO, Commissioner of Social Security, Defendant.[1] | ) | |

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Amanda D. Q., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 9 (Plaintiff's Brief); Docket Entry 10 (Commissioner's Brief); Docket

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute as Defendant in this suit. Neither the Court nor the parties need take further action to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Entry 11 (Plaintiff's Reply)). For the reasons that follow, the Court will remand this matter for further administrative proceedings.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI (Tr. 329-37), alleging a disability onset date of January 1, 1997 (see Tr. 329), which she later amended to her application date of July 12, 2022 (see Tr. 52, 77, 359).[3] Upon denial of that application initially (Tr. 120-29, 173-77) and on reconsideration (Tr. 130-38, 185-88), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 189, 261). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 41-68.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 145-66.) The Appeals Council thereafter granted Plaintiff's request for review (Tr. 167-72, 262-64, 454-55), ruling that, although the ALJ found "the opinion of consultative examiner L. Young, M.D. . . . very persuasive[,]" the ALJ's decision "d[id] not address why [Dr. Young's] limi[t]ations [to 'occasional

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 8 at 1.)

[3] Plaintiff lacked eligibility for SSI benefits until her application date of July 12, 2022. See 20 C.F.R. § 416.202 (explaining that a claimant remains ineligible for SSI benefits until date he or she files SSI application); 20 C.F.R. § 416.501 (stating that a claimant may not receive SSI benefits for any period that predates first month he or she satisfies eligibility requirements, which cannot precede application date).

overhead and forward reaching with [t]he right upper extremity'] were not warranted" (Tr. 169), and ordered the ALJ to hold a new hearing (see Tr. 170).

The ALJ convened a new hearing, which Plaintiff, her attorney, and a new VE attended (Tr. 69-97), after which the ALJ again denied Plaintiff's application for benefits (Tr. 19-40). The Appeals Council subsequently denied Plaintiff's request for review (Tr. 6-11, 324-26, 485-87), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since July 12, 2022, the application date.
>
> 2. [Plaintiff] has the following severe impairments: history of stroke with residual right-sided deficits, cervical degenerative disc disease, fibromyalgia, obesity, type II diabetes mellitus, and migraines.
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except lifting 20 pounds occasionally and 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours, alternate to standing for 10 minutes after every one hour of sitting; standing for 6 hours, alternate to sitting for 10 minutes after every 30 minutes of standing; walking for 6 hours, alternate to sitting after

> 30 minutes of walking; push/pull as much as can lift/carry; operate hand controls with right hand frequently; operate hand controls with left hand frequently; occasionally reaching overhead to the left; occasionally reaching overhead to the right; for all other reaching, she can reach frequently to the left, and can reach frequently to the right; handle items frequently with the left and right hands; fingering limitations frequently with the left hand and frequently with the right hand; feel limitations frequently on the left and frequently on the right; climb ramps and stairs frequently; never climb ladders, ropes, or scaffolds; balance frequently; stoop occasionally; kneel frequently; crouch occasionally; crawl occasionally; never work at unprotected heights or around moving mechanical parts; work in weather occasionally, in humidity and wetness occasionally, in dust, odors, fumes and pulmonary irritants occasionally, in extreme cold occasionally, in extreme heat occasionally; never work in vibration; and work in moderate noise.
>
> . . .
>
> 5. [Plaintiff] has no past relevant work.
>
> . . .
>
> 9. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.
>
> . . .
>
> 10. [Plaintiff] has not been under a disability, as defined in the . . . Act, since July 12, 2022, the date the application was filed.

(Tr. 25-33 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v.

Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court will remand this matter for further administrative proceedings.

**A. Standard of Review**

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the

[4] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to

adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines

---

indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[6] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age,

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

**B. Assignment of Error**

Plaintiff's first and only assignment of error maintains that "[t]he ALJ erred in failing to resolve material inconsistencies between the ALJ's assessment of the opinion of consultative examiner L. Young, M.D., and the ALJ's assessment of Plaintiff's RFC." (Docket Entry 9 at 3 (bold font and block formatting omitted); see also Docket Entry 11 at 1-3.) More specifically, Plaintiff notes that "the ALJ stated that Dr. Young's opinion was 'unpersuasive' because it was not sufficiently restrictive and th[at] . . . [the ALJ] wrote a more restrictive RFC" (Docket Entry 9 at 11 (quoting Tr. 32)), but points out that "Dr. Young's opinion is more restrictive regarding reaching than the ALJ's assessment of Plaintiff's RFC" (id. at 11-12). In particular, Plaintiff emphasizes that "Dr. Young opined that Plaintiff was limited to

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

'occasional reaching overhead and reaching forward' with her right upper extremity" (id. at 12 (quoting Tr. 629)), but "the ALJ concluded that Plaintiff was limited to 'occasionally reaching overhead to the right' and 'for all other reaching' she could 'reach frequently to the right'" (id. (quoting Tr. 27)). According to Plaintiff, "[b]ased on the medical evidence of record and Plaintiff's testimony, it is reasonable to expect that Plaintiff is limited to occasional forward reaching with her right arm as Dr. Young opined." (Id.; see also id. at 12-13 (describing evidence Plaintiff believes supports occasional forward reaching with the right arm (citing Tr. 558, 626-29, 697)).) In Plaintiff's view, "[t]he ALJ's failure to explain why [his] assessment of Plaintiff's RFC is less restrictive than Dr. Young's assessment regarding reaching forward on the right despite purportedly writing a more restrictive RFC harms Plaintiff because all of the jobs the ALJ cited as the basis for denying Plaintiff's claim require frequent reaching." (Id. at 13 (citing Tr. 33).) For the reasons that follow, Plaintiff's assertions have merit and warrant remand.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 329-37)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence, see Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not

assign an evidentiary weight to medical opinions or accord special deference to treating source opinions. See 20 C.F.R. § 416.920c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources"). Instead, an ALJ must determine and "articulate in [the] . . . decision how persuasive [he or she] find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 416.920c(b) (emphasis added). Moreover, when a medical source provides more than one opinion, the ALJ can evaluate the persuasiveness of such opinions "together in a single analysis," and need not articulate how he or she considered those opinions "individually." 20 C.F.R. § 416.920c(b)(1).

In evaluating the persuasiveness of an opinion, the SSA deems supportability and consistency "the most important factors," and, thus, the ALJ must address those two factors in evaluating the persuasiveness of an opinion. 20 C.F.R. § 416.920c(b)(2).[8] The ALJ must discuss the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all

[8] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 416.920c(c)(2).

"other factors that tend to support or contradict" the opinion, 20 C.F.R. § 416.920c(c)(3)-(5) — only when the ALJ finds two or more opinions about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 416.920c(b)(3).

On December 10, 2022, Dr. Young conducted a consultative medical examination of Plaintiff, at which Dr. Young noted that Plaintiff could ambulate and get on and off the examination table without assistance (see Tr. 626), and had trigger points along her right arm and lower back (see id.), mild tenderness and stiffness in her neck (see Tr. 627), 4/5 grip and upper extremity strength on the right versus 5/5 on the left (see id.), normal sensation (see id.), 30 degrees of reduced range of motion in her shoulder forward elevation and abduction (see Tr. 628), normal and symmetric deep tendon reflexes (see Tr. 629), and "[n]o weakness [] on repetitive activities" (id.). Dr. Young diagnosed Plaintiff with "[c]hronic residual deficits stemming from stroke at the age of 12 including history of Parkinsonian symptoms evidenced by right upper extremity weakness," "[m]igraine headaches with unpredictable recurrence, likely triggered by stress," and "[c]hronic pain/fibromyalgia with history of diagnosis and consistent with trigger point examination." (Id.) As a result of those impairments, Dr. Young opined that Plaintiff could sit, stand, and walk up to six hours total, lift and carry 50 pounds occasionally and 25 pounds frequently, frequently climb stairs and ladders, balance, stoop,

crouch, kneel, and crawl, frequently handle, finger, and feel with the right upper extremity, and occasionally reach overhead and forward with the right upper extremity. (See id.) As a "[j]ustification for [the manipulative] limitations," Dr. Young stated that "[Plaintiff] ha[d a] history of right arm weakness" and "may have difficulty lifting her arm effectively." (Id.)

The ALJ discussed Dr. Young's findings on examination (see Tr. 29), summarized Dr. Young's opinions (see Tr. 32), and provided the following analysis of the persuasiveness of those opinions:

> Dr. Young's opinions are unpersuasive as it [sic] does not fully take into account [Plaintiff]'s pain symptoms which would pose additional exertional and postural limitations. The numbness and tingling in [Plaintiff]'s right upper extremity would also further restrict her ability to manipulate objects. [Plaintiff]'s migraines would also warrant environmental limitations regarding pulmonary irritants, weather and noise.

(Id. (emphasis added).) As the following discussion shows, the ALJ erred in his evaluation of Dr. Young's manipulative limitations.

The ALJ indicated that he found Dr. Young's opinions "unpersuasive" because they did not "fully take into account [Plaintiff]'s pain symptoms." (Id.) Consistent with that statement, the exertional, postural, and environmental limitations in the RFC reflect greater limitations than those contained in Dr. Young's opinions. (Compare Tr. 27 (RFC limiting Plaintiff to lifting/carrying 20 pounds occasionally and 10 pounds frequently, alternating between sitting, standing, and walking at given

intervals, no climbing of ladders, ropes, or scaffolds, occasional stooping, crouching, and crawling, occasional exposure to unprotected heights, moving mechanical parts, weather, humidity, wetness, pulmonary irritants, extreme heat, and extreme cold, no work involving vibration, and moderate noise), with Tr. 629 (Dr. Young's opinions restricting Plaintiff to lifting/carrying 50 pounds occasionally and 25 pounds frequently, no allowance for alternating position, frequent climbing of ladders, stooping, crouching, and crawling, and no environmental limitations).)

In contrast, however, the RFC contains lesser manipulative restrictions for Plaintiff's dominant right upper extremity than Dr. Young's manipulative restrictions (compare Tr. 27 (RFC limiting Plaintiff to occasional overhead reaching, and frequent reaching in all other directions, operation of hand controls, handling, fingering, and feeling with the right upper extremity), with Tr. 629 (Dr. Young's opinions restricting Plaintiff to occasional overhead and forward reaching, and frequent handling, fingering, and feeling with the right upper extremity)), despite the ALJ's finding that "[t]he numbness and tingling in [Plaintiff]'s right upper extremity would also further restrict her ability to manipulate objects" (Tr. 32 (emphasis added)). Although the ALJ included a limitation to frequent operation of hand controls with the right upper extremity not present in Dr. Young's opinions (compare Tr. 27, with Tr. 629), critically, the ALJ decreased the

level of restriction involving forward reaching from Dr. Young's opined level of "occasional" (Tr. 629) to "frequent[]" (Tr. 27). The ALJ failed to explain why he imposed a lesser limitation than Dr. Young's limitation for right forward reaching, despite finding that Plaintiff's right arm symptoms necessitated greater manipulative limitations (see Tr. 32).

Furthermore, the ALJ's error in this regard does not qualify as harmless under the circumstances presented here. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). All three of the jobs cited by the VE (see Tr. 65-66) and adopted by the ALJ at step five of the SEP (see Tr. 33) require frequent reaching, see Dictionary of Occupational Titles ("DOT"), No. 209.587-034 ("Marker"), 1991 WL 671802 (G.P.O 4th ed. rev. 1991); DOT, No. 222.587-038 ("Router"), 1991 WL 672123; DOT, No. 344.667-010 ("Ticket Taker"), 1991 WL 672863.[9] As the United States Court of Appeals for the Fourth Circuit has recognized, the DOT differentiates neither between the different directions of reaching, nor between right versus left upper extremity reaching.

[9] The DOT job "Ticket Taker," DOT, No. 344.667-010, 1991 WL 672863, corresponds to the job the VE and the ALJ called "gate attendant" (Tr. 33, 66).

See Pearson v. Colvin, 810 F.3d 204, 210-11 (4th Cir. 2015). Thus, the jobs adopted by the ALJ here, which the DOT indicates require frequent reaching, could require frequent forward reaching with the right upper extremity in conflict with Dr. Young's limitation to occasional forward reaching with the right upper extremity (see Tr. 629). Accordingly, as Plaintiff argues, the possibility exists "that, had the ALJ adopted Dr. Young's opined restriction to occasional reaching forward with the right upper extremity, none of the three jobs the ALJ cited as the basis for denying Plaintiff's claim would be available." (Docket Entry 9 at 13.)

Put simply, Plaintiff's first and only assignment of error requires remand.

## III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **VACATED**, and that this action is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to include re-evaluation of the persuasiveness of Dr. Young's opinions regarding Plaintiff's manipulative abilities. Furthermore, in view of the Appeals Council's previous remand of this case involving the ALJ's error in assessing Dr. Young's opinions in the ALJ's prior decision (see Tr. 167-72), "the Court recommends that the Commissioner assign this

case to a different ALJ on remand," but "does not require the Commissioner to do so," Sherman v. Berryhill, No. 18CV439, 2019 WL 2450919, at *16 (D.N.M. June 12, 2019) (unpublished); see also Ortiz v. Chater, No. 95CV3126, 1997 WL 50217, at *3, n.1 (E.D.N.Y. Jan. 30, 1997) (unpublished) (explaining that prior order to remand to different ALJ "reflected [the court's] feeling that, rather than have the same ALJ review the claims a third time, a fresh look by another ALJ would be beneficial").

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

September 14, 2026